UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>   )<br>   Plaintiff,   )<br>   )<br>v.   )<br>   )<br>GREGORY WILCHECK,   )<br>   )<br>   Defendant.   )  | No. 6:15-CR-45-GFVT-HAI<br><br>RECOMMENDED DISPOSITION |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 51), the Court considers reported violations of supervised release conditions by Defendant Gregory Joseph Wilcheck.

Judge Van Tatenhove entered a judgment against Defendant in August 2016 following a guilty plea to two counts of bank fraud in violation of 18 U.S.C. § 1344(2). D.E. 42, 44. He received a prison sentence of 36 months, followed by a five-year term of supervised release. D.E. 44 at 1-2. He was also ordered to pay $1,408,970.68 in restitution. *Id*. at 5. Defendant began his term of supervised release on June 6, 2018. On September 18, 2018, Defendant attended a status conference before Judge Van Tatenhove. D.E. 50.

**I.**

On January 9, 2019, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report, on December 13, 2018, Defendant was arrested and charged in Fayette District Court case 18-T-28945 with driving while under the influence of alcohol and leaving the scene of an accident. The report states:

> According to the Uniform Citation and DUI Arrest Report, Mr. Wilcheck was ultimately located at 3808 Salmon Court, Lexington, Kentucky, after his vehicle

was witnessed in a collision at Trent Boulevard and Man O'War. Mr. Wilcheck allegedly fled the scene of that location, and a witness followed him to Gar Court, where he struck a mailbox and again fled the scene. A dispatched call reported that the suspect had driven on top of a large woodpile at 3808 Salmon Court. Upon Lexington Police arriving at the scene, Mr. Wilcheck and his vehicle smelled of alcoholic beverages, and he was barely able to hold himself up. An empty 375 milliliter of Barcardi Rum and a blue solo cup filled one fourth full with rum were located in the vehicle. His speech was slurred and questions had to be asked of him multiple times and he became combative. He was then transported to the hospital [where blood was drawn].

This was Defendant's third DUI offense within ten years. According to Defendant's probation officer, the state prosecutor believed that one of the aggravators in Ky. Rev. Stat. § 189A.010(11) was present, meaning that Defendant's sentence on the state charge would include mandatory sixty days imprisonment, with a maximum imprisonment of twelve months. Specifically, the prosecutor suspected that Defendant's blood alcohol content was above .15g/100mL, triggering the enhanced punishment. *See* KRS § 189A.010(5)(c), (11)(d). This matter was continued several times as the parties awaited results of the blood test. In April 2019, the blood drawn from Defendant on December 13, 2018, revealed an extremely high blood alcohol content of .331 g/100mL. Defendant is scheduled to appear in state court on May 6, 2019.

Based on this arrest, Violation #1 charges a violation of the condition that Defendant not commit another federal, state, or local crime. This is a Grade C violation.

Violation #2 charges a violation of the condition requiring Defendant to make restitution payments. According to the Report, "Mr. Wilcheck has not paid restitution since October 22, 2018. He has paid a total of $1,725 towards his total amount of restitution. His balance owed as of this writing is $1,407,445.68." This is a Grade C violation. The government ultimately

moved to dismiss this violation on account of the extenuating circumstances (discussed below) that made Defendant unable to continue payments.

The Court conducted an initial appearance on the Report, pursuant to Rule 32.1, on January 14, 2019 and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 53. The United States moved for interim detention; Defendant asked to continue the issue generally. *Id.* Based on the heavy § 3143 defense burden, Defendant was remanded to the custody of the United States Marshal. *Id.*

At the final hearing on April 22, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 62. The government moved to dismiss Violation #2, and Defendant stipulated to Violation #1. He admitted that he had consumed alcohol before driving, and that he kept driving after hitting another vehicle and a mailbox. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for this violation as described in the Report. The United States thus established Violation #1 under the preponderance-of-the-evidence standard of § 3583(e)(3).

## II.

The Court has evaluated the entire record, including the Report, its accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to two counts of bank fraud in violation of 18 U.S.C. § 1344(2)—a Class B felony. D.E. 42, 44. For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation. Given Defendant's criminal history category of III (the category at the time of the conviction) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is five to eleven months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's maximum supervised release term for his Class B felony is five years (60 months), less any term of imprisonment imposed. *See* 18 U.S.C. § 3583(h).

### III.

At the final hearing, the government requested a penalty of eight months of incarceration, followed by the maximum available term of supervised release, 52 months. The defense requested an incarceration sentence at the bottom of the Guidelines Range (five months) and did not address additional supervised release.

Concerning Violation #2 for failure to pay restitution, the government explained that the Probation Office would not have included this violation if it had been aware of Defendant's medical issues that precipitated his failure to maintain payments. The government stressed that the restitution order was an important aspect of Defendant's sentence but moved to dismiss the violation.

Concerning the penalty for Violation #1, the government argued that the behavior warranted a mid-Guidelines sentence. On one hand, the DUI put people at risk and revealed a need to deter criminal conduct and protect the public. On the other hand, this was technically Defendant's first violation, and the DUI had an attenuated relationship to the underlying bank fraud charges.

The government stressed Defendant's history of alcohol abuse and its connection to criminal conduct. Defendant, according to his PSR, started "binge" drinking in 2004. His alcoholism fed into a gambling problem, which created a need for money that fueled Defendant's bank fraud. Thus, alcohol was to some degree tethered to the underlying offense. Also, this DUI was not exactly a first violation of release conditions. While on pretrial release, Defendant was charged with DUI. Alcohol use also violated his conditions of pretrial release. Defendant's pretrial release was revoked. Defendant also has convictions prior to his federal case for public intoxication and disorderly conduct. In sum, Defendant's history and characteristics show a relationship between alcohol abuse and resulting crime, including driving while intoxicated and having problems with authority. Defendant has also received treatment in the past, which the government argued aggravated the breach of the Court's trust.

The defense argued that all these circumstances were mitigated by Defendant's emotional state and his medical issues, thus warranting a bottom-of-the-Guidelines penalty. Defendant addressed the Court at length. He explained that he takes his alcoholism very seriously. He was the "premier student" in his 10-month RDAP program while incarcerated. He left the halfway house in June. He also obtained counseling from Windows of Discovery. He has been sober for almost three years. After his release, he obtained full-time employment and had been promoted several times. Eventually he was an executive over four car dealerships.

However, on October 1, Defendant suffered a heart attack. His first surgeries failed to solve his blockages, and in late November he had triple bypass surgery. Medical bills drained his available funds. He was unable to return to work during this period.

Prior to his arrest, Defendant explained he fell and "busted" his head. Although London EMTs "looked at" him, Defendant explained he needed to go to Lexington for treatment so it would be covered through his insurance with the Veteran's Administration. Prior to leaving London for Lexington, he stopped at a liquor store and bought a "half pint." He did so because he was "in extreme pain" in his head and his chest. After the accident, police took Defendant to the UK hospital. There, he was diagnosed with a concussion and two broken ribs. Essentially, Defendant and counsel argued that his violation conduct resulted from desperation, not a lack of respect for his release conditions.

Defendant apologized to the Court. He acknowledged he broke the law but said there were "a lot of extenuating circumstances." He said he hoped he could be placed in a halfway house again and was willing to go to the VA or Alcoholics Anonymous for additional counseling.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The first consideration is the nature and circumstances of Defendant's underlying conviction.[1] He used his position as owner or co-owner of three businesses to "float" checks between his various banking accounts, forcing the banks to cover insufficient funds. Here, as the government noted, the connection between the underlying conviction and the revocation

---

[1] *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release).

behavior is tenuous. But the underlying conviction is one example of Defendant making poor decisions while under stress.

Defendant's personal history and characteristics are important. On the positive side, Defendant was successful on supervision for several months, was a valuable worker, and was sober for nearly three years. However, he does have a history of alcohol abuse, including prior DUIs. Most recently, his pretrial release was revoked in 2016 following two DUI arrests (when Defendant's bond conditions proscribed any alcohol consumption). Also relevant is the fact that Defendant had undergone two months of extensive medical interventions, with all the accompanying anxiety.

Counterbalancing Defendant's "extenuating circumstances" are the need to protect the public and deter additional criminal conduct. Driving while intoxicated threatens the lives of everyone else on the road. And here, Defendant's third Kentucky DUI with a BAC of .331 is outrageous. Though he was in pain, Defendant failed to consider the danger he posed to others. And he is fortunate his accident caused no serious physical injury to others. Defendant must be given a clear message that he cannot drink and drive again.

Another factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence.

The Guidelines suggest that the primary wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Defendant's conduct here is a significant trust breach, especially in

light of the revocation of his pretrial bond for driving while intoxicated.  He must accept that he does not have the liberty to choose to drink while under supervision.

At the final hearing, the probation officer explained that Defendant could, upon release, be placed in a treatment program that lasts for a minimum of 90 days.  After the 90 days, Defendant would have the option to continue in treatment, which would also involve opportunities for help with obtaining employment.  Thus, although the Court will not order Defendant to a halfway house as he requested, the proposed treatment program would include transition assistance if Defendant chooses.

The undersigned therefore recommends that Defendant serve five months of imprisonment, followed by 90 days of inpatient treatment.  This recommendation is similar to the government's in that Defendant will be away from the public for eight months.  Defendant must successfully finish the ninety days of treatment.  All the time Defendant spends in treatment will be counted as part of his supervised release.  Subtracting the five months of incarceration from the maximum 60 months of post-release supervision leaves 55 months of available supervised release.  The undersigned recommends imposing this maximum supervision period to protect the public and ensure that Defendant maintains his restitution payments.

### V.

Based on the foregoing, the Court **RECOMMENDS**:

(1)   That Defendant be found guilty of Violation #1

(2)   Upon the government's motion, that Violation #2 be dismissed.

(3)   Revocation with a term of imprisonment of five months, with 55 months of supervised release to follow, under the same conditions previously imposed, with one additional condition.

>   (4)   The additional condition that, immediately upon release, Defendant successfully complete a 90-day inpatient alcohol abuse treatment program, as described by the probation officer.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **fourteen days** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 24th day of April, 2019.

Signed By:
*Hanly A. Ingram* /s/
United States Magistrate Judge